IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPECIALTYCARE INC.,** *et al.*, | : | CIVIL ACTION NO. 1:25-CV-224 |
| | : | |
| Plaintiffs | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| **AETNA, INC.,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

In 2020, Congress passed the No Suprises Act ("NSA") to offer protections to patients receiving care at out-of-network providers. But while patients are spared from surprise billing, their insurers must come to an agreement with the out-of-network providers about the true cost of services rendered. Congress created a special procedure to resolve the disputes between insurers and providers. As part of this scheme, Congress decided to largely remove this dispute resolution process from the purview of federal courts. Because one of the small exceptions does not apply here, this court does not have jurisdiction over this case and so it must be dismissed.

**I. Factual Background & Procedural History**

The NSA protects patients from paying surprise out-of-network medical bills, 42 U.S.C. §§ 300gg-131(a), 300gg-132, instead making insurers and providers deal with settling the final bill, id. § 300gg-111(c)(1)-(5). When a provider and insurer cannot agree on a final price for medical care covered by the NSA, they must use the statutory independent dispute resolution ("IDR") process. Id. § 300gg-111(c)(1)-(2).

In this process, a certified independent dispute resolution entity ("CIDRE") presides as a referee over the dispute. Id. § 300gg-111(c)(2), (4)-(5). The parties then engage in "baseball-style" arbitration process where each submits an offer and the CIDRE selects one party's offer as the final amount. Id. § 300gg-111(c)(5). The CIDRE's selection is based on factors enumerated by statute such as "the median of the contracted rates recognized by the plan or issuer . . . under such plans or coverage" as adjusted for inflation and things like the "level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service. See 42. U.S.C. § 300gg-111(c)(5)(C)(ii); § 300gg-111(a)(3)(E)(i).

The CIDRE's decision "shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the [CIDRE] involved." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Additionally, the CIDRE's decision "shall not be subject to judicial review, except in a case described by [Section 10 of the Federal Arbitration Act ("FAA")]." Id. § 300gg-111(c)(5)(E)(i)(II). This means a decision by a CIDRE is only subject to judicial review in cases of fraud, corruption, misconduct on the part of the CIDRE, or if the CIDRE exceeded its powers. See 9 U.S.C. § 10(a)(1)-(4).

Congress did include other enforcement mechanisms in the NSA. First, the NSA delegates to the states the ability to regulate insurers to meet the requirements of the NSA. 42 U.S.C. § 300gg-22(a)(1).[1] When the Secretary of Health

---

[1] Section 300gg-22(a)(1)'s reference to "part D" refers to the NSA. See Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Div. BB, 134 Stat. 1182, 2758-59 (2020).

and Human Services ("the Secretary") determines a state "has failed to substantially enforce a provision (or provisions) in this part or [the NSA] with respect to health insurance issuers in the State," he may fine an insurer to enforce the NSA. Id. § 300gg-22(a)(2), (b). Though, civil enforcement has been a challenge. A Government Accountability Office ("GAO") report noted no fines had been issued as of May 2023, and that agency enforcement was limited due to "budget constraints." U.S. GOV'T ACCOUNTABILITY OFFICE ("GAO Report"), GAO-24-106335, ROLL OUT OF INDEPENDENT DISPUTE RESOLUTION PROCESS FOR OUT-OF-NETWORK CLAIMS HAS BEEN CHALLENGING 35, 38 (2023).

Turning to the specifics of this case, Plaintiffs are SpecialtyCare, Inc., a Delaware corporation, and two of its affiliates, Remote Neuromonitoring Physicians, PC, a Pennsylvania corporation, and Sentient Physicians, PC, an Illinois corporation (collectively hereinafter "SpecialtyCare"). (Doc. 22 ¶ 3). SpecialtyCare is an intraoperative neuromonitoring provider. (Id.). It has brought suit against defendant, Aetna, Inc. a Pennsylvania insurance corporation, contending Aetna owes $1,437,377 in unpaid awards resulting from the dispute resolution process of the NSA. (Id. ¶¶ 2, 4). Originally, SpecialtyCare brought this suit in the Dauphin County Court of Common Pleas, though Aetna invoked federal question jurisdiction and removed it to this court.

## II. Legal Standard

A motion for award on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. Westport Ins. Corp. v. Black, Davis &

3

Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2015). A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss. See Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). That is, judgment on the pleadings should be granted only when, accepting as true the facts alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the movant is entitled to judgment as a matter of law. See id. (citation omitted).

### III. Discussion

SpecialtyCare brings 5 claims in its complaint. First, it seeks confirmation of the IDR awards pursuant to Pennsylvania's Revised Uniform Arbitration Act, 73 PA C.S.A. § 7301, *et seq.*, (Count I) and Section 9 of the FAA, 9 U.S.C. § 1, *et seq.*, (Count II). Next, SpecialtyCare alleges three state causes of action: account stated (Count III), quantum meruit (Count IV), and unjust enrichment (Count V).

This is not the first time the issue of enforcing IDR awards has been brought to a federal court. A growing number of courts, most notably the Fifth Circuit, have

4

rejected the idea that a party may seek judicial enforcement of IDR awards. See, e.g., Guardian Flight, L.L.C. v. Health Care Serv. Corp., 140 F.4th 271, 277 (5th Cir. 2025); Mod. Orthopaedics of NJ v. Premera Blue Cross, No. 2:25-CV-01087, 2025 WL 3063648, at *7, 13-14 (D.N.J. Nov. 3, 2025). Only one court has found otherwise. Guardian Flight LLC v. Aetna Life Ins. Co. ("Aetna Life"), 789 F. Supp. 3d 214, 229 (D. Conn. 2025). Despite SpecialtyCare's requests to the contrary, this court will join the majority in finding the NSA does not create a private right of action.

As the NSA does not create an explicit cause of action to enforce IDR awards, SpecialtyCare must show Congress intended to create an implicit one. See McGovern v. City of Philadelphia, 554 F.3d 114, 116 (3d Cir. 2009) (citations omitted). Notably, while the NSA does not create an explicit cause of action to *confirm* an IDR award, it does create a cause of action to *vacate* one. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). This distinction speaks volumes. Congress made a clear choice to allow parties the opportunity to vacate IDR awards per Section 10 of the FAA, but not to confirm them under Section 9. As other courts have found, this is convincing evidence Congress did not wish to create a private remedy to enforce an IDR award. Guardian Flight, 140 F.4th at 276-77; Mod. Orthopaedics, 2025 WL 3063648, at *9 (D.N.J. Nov. 3, 2025).

SpecialtyCare argues, and a district court in Connecticut held, that only allowing judicial oversight of IDR judgments in the context of Section 10 of the FAA would "create strange asymmetries." (See Doc. 38 at 10). See also Aetna Life, 789 F.

5

Supp. 3d at 228. Maybe so. But Congress is afforded wide latitude in creating statutory schema. When faced with the choice of holding that courts could confirm IDR awards under Section 9 of the FAA, when Congress explicitly only authorized action under Section 10, compared to holding Congress deliberately chose asymmetrical review of IDR awards, the latter is the less absurd result. Moreover, there are other enforcement mechanisms in the NSA to ensure timely payments of IDR awards. States have been given authority to enforce the law and, failing that, the Secretary may fine non-compiling parties. 42 U.S.C. §§ 300gg-22(a)(1), (a)(2), (b). SpecialtyCare may find these remedies inadequate, (see Doc. 38 at 12-13), but that does not mean they do not exist, see GAO report, supra, 34-35 (detailing the administrative remedies available under the NSA). In sum, nothing about the structure of the NSA evinces a Congressional intent to create a private cause of action to enforce IDR awards. If anything, Congress' intent was the opposite: it wanted to deprive federal courts of the ability to enforce them.

Having determined neither the NSA nor the FAA can provide SpecialityCare with any relief, the question now becomes whether the court still possesses jurisdiction in this case. Ordinarily, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Talley v. Wetzel, 15 F.4th 275, 281 (3d Cir. 2021) (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). Yet, Aetna claims the NSA

preempts SpecialtyCare's state law claims and, in certain occasions, claims of preemption can create a federal question. See Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA, 36 F.3d 306, 310-11 (3d Cir. 1994) (citations omitted).

Only when "Congress [] so completely preempt[s] a particular area, that any civil complaint raising this select group of claims is necessarily federal in character" can a party use preemption as a backdoor to federal question jurisdiction. Id. at 311 (quoting Ry. Lab. Executives Ass'n v. Pittsburgh & Lake Erie R. Co., 858 F.2d 936, 939 (3d Cir. 1988)). This "complete preemption" is rare; "[t]he Supreme Court has recognized only three completely preemptive statutes: the Employee Retirement Income Security Act ("ERISA"), the Labor Management Relations Act ("LMRA"), and the National Bank Act." Maglioli v. All. HC Holdings LLC, 16 F.4th 393, 408 (3d Cir. 2021). Thus, "the fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted does not establish that they are removable to federal court." Goepel, 36 F.3d at 310.

With respect to the NSA, rather than preempt state action, Congress explicitly *included* states as part of the statutory design. See 42 U.S.C. § 300gg-22(a)(1) ("[E]ach State may require that health insurance issuers that issue, sell, renew, or offer health insurance coverage in the State in the individual or group market meet the requirements of this part and part D with respect to such issuers."); § 300gg-23(a)(1) ("[The NSA] shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection

7

with individual or group health insurance coverage except to the extent that such standard or requirement prevents the application of a requirement of this part or [the NSA]."). Perhaps some or all of SpecialtyCare's state law claims will ultimately be held to prevent application of the NSA and so be preempted. But that does not change the fact that Congress wanted states to continue to play a role in regulating the health insurance marketplace. And that fact alone means preemption cannot create federal jurisdiction here.

## IV. Conclusion

The NSA does not create a private right of action to enforce IDR awards, and the court will grant that part of Aetna's motion for judgment on the pleadings. Having done that, the court no longer has a basis for jurisdiction as the parties are not diverse and the NSA does not completely preempt all state action in this area. As such, the court will decline to exercise supplemental jurisdiction on the remaining state law claims and remand them to the Dauphin County Court of Common Please. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    December 23rd, 2025